Suttliff, J.
From the statement of facts it is evident that the issuing of the notes by the plaintiffs in error in 1840,'brought them within the provisions of those sections of the statutes relied upon by defendant in error. Indeed, from the agreed statement, the whole case must depend upon the question, whether the plaintiffs in error, by force of the statutes referred to, can be held liable in ^contract as the makers of the notes, and thereby bound to ■perform the promises expressed by the notes, as the makers thereof. If liable upon the notes as. makers, the plea of the four years’ limi *314 tation,urged by their answer, would be insufficient; but if the liability imposed by the statutes upon plaintiffs in error, is only statutory, or in the nature of a penalty, four years would limit the-right of action, and the plea would be good.
Let us then proceed to an examination of the nature of the liability imposed by the statutes referred to.
It appears in the first place that the notes were issued on the account of the company; that the company had received the consideration for the notes; was indebted to the contractors of the work to the amount, and delivered the notes to them as evidence of such indebtedness.
The Cincinnati and Whitewater Canal Company, by its charter, was authorized to execute notes, under such circumstances, expressive of the amount actually due their creditors; and it was their duty to do so, if unable to pay, and requested by their creditors to give its notes. The consideration, circumstances, and terms of the transactions and notes, show that the company was the maker, the promisor of the notes, and liable, upon their issue for the payment thereof; unless released from such liability by the statute. But upon reading the statute relied upon by defendant in error, it is evident that the law does not exonerate the company from the obligations of its contract expressed by the notes. Indeed, the power to issue notes to its creditors, expressive of the indebtedness of the company to the workmen engaged in constructing the canal, for which the company was incorporated, is so obviously within the provisions of its charter, we apprehend no legislature would feel authorized to attempt to inhibit the exercise of such right by the company, under its charter.
The following is the form of the notes:
“The Cincinnati and Whitewater Canal Company promise to pay three dollars to S. & H. Howard & Co., or order, twelve months after date, for value received, at their office. Cincinnati, 17th June, 1840. “ J. Bonsall, President.
“ Sam’l E. Foote, Secretary.”
*Thc notes were of different denominations, but none larger than five dollars; and were engraved and issued in the likeness of bank-bills. •
According to the terms of the notes, the company appears to be the only promisor, and holden for their payment. If sued upon its *315 indebtedness expressed by the notes, it might be well doubted' whether the company could be permitted to so far take advantage-of its own wrong, as to set up as a defense that it had issued its-notes for such indebtedness in the similitude of bank-notes to circulate as money.
The contract or promise expressed by the notes, and shown by the statement of the case, was one made by the canal company aspromisor to the promisee or indorsee as the other party. This relation and liability of the company as promisor being established by the terms of its promissory notes, and not taken away by the-statutes, must necessarily remain, irrespective of any liability upon individual stockholders by the statute.
In what manner then, are the plaintiffs in error liable upon those-notes ? Is their liability one in contract, or in tort ? If in contract, is it a contract made by themselves; or, is it one imposed: upon them by the statute ? .
A contract is an agreement, upon sufficient consideration, between-two or more persons to do or not to do a particular thing.
Hence, to constitute a valid contract, there must be parties capable to contract; a lawful subject-matter of contract; a sufficient-consideration therefor; and an actual agreement between the parties-to do, or to forbear doing the thing proposed in the agreement.
The rules of construction applicable to written contracts generally, are the rules applicable to the promissory notes under consideration, in determining whether they are in fact the contracts or promises of the plaintiffs in error.
In the first place then, the question proposed is to be determined' by the express provisions of the promissory notes, if those provisions are clear and unambiguous, without resorting to rules of interpretation. In such a case the common-law maxim, “quoties■ *in verbis nulla est ambiguitas ibi nulla expositia contra verba fienda est,” should apply. 2 Saund. 157.
“The first general maxim of interpretation,” says Mr. Vattel, “isr that it is not allowable to interpret what has no need of interpretation. When a deed is worded in clear and precise terms; when its meaning is evident, and tends to no absurd conclusion, there can be no reason for refusing to admit the meaning which such deed naturally presents. To go elsewhere in- search of conjectures in order to restrict or extend it, is but an attempt to evade it.”
Under the application of these leading maxims, we are precluded! *316 from having respect to anything else than the plain and expresa language of the promissory notes to determine whether the plaintiffs in error are, by the terms thereof, the makers and promisors of the notes.
The meaning of those instruments of writing is certainly clear, and tends to no absurd conclusion.
No mention is made of the names of plaintiffs in error, either within, or upon the notes. It is evident from their express terms, .that the notes are expressive of the promises of the company to pay; but contain no intimation of any promise on the part of the plaintiffs in error. And this being so, it is no more admissible to look to the statutes under consideration, to determine whether the notes express a contract or promise on the part of plaintiffs in error, than it would be to call witnesses to prove their meaning to be contrary to the express terms of the notes.
It is obvious, therefore, that the statutes can not be referred to, for the purpose of showing that the plaintiffs in error in fact made the promise in writing expressed by the notes; and that such promise is in writing, and so not subject to a limitation of four years.
Reference can only be had to the statutes under consideration to show that a liability has been imposed upon plaintiffs in error to pay the notes, and to show the nature of that liability.
And here, we apprehend, arises the single question upon which the right of action in this case depends.
*Does the statute, ex vi termini, constitute plaintiffs in error makers or promisors of the notes sued upon ?
It is insisted by counsel for defendant in error, that the liability imposed by the statute is one ex contractu, and not in tort; and that the statutet makes plaintiffs in error liable as makers of the notes.
But in order to show that this liability of plaintiffs in error to pay the amount of the notes arises in contract, instead of in tort, the following conclusions must be arrived at: 1. That there is no need of two parties to make a contract; 2. That there is no need of a consideration, or to have any actual promise or agreement, on the part of the person liable for the payment, expressed by the terms of the contract; and, 3. That it is not necessary that there should be a legal subject-matter of contract.
If the plaintiffs in error were held liable on the notes in contract, and if the amount of the judgment should be' collected from one of them, he would of course be entitled to contribution. If a re *317 covery should be had under section 4 of the act of 1816, of the penalty thereby provided, of four times the amount of one of these notes, against an indorser thereof, after paying such penalty, having possession of the note, he could recover its amount from one or more of the stockholders.
Another embarrassment, which would arise from legalizing the circulation of this unauthorized bank paper, would be found in determining the rights of the indorsers. When would an indorser, other than a stockholder, become liable upon his indorsement? Would his liability attach upon presentation to the company and due notice of dishonor; or would the stockholders, in'that respect, also be regarded as the makers of the notes ?
Many other questions, involving the .parties in doubt, perplexities, and inextricable difficulty would necessarily arise, from construing the liability imposed by the statute upon the stockholders' to be one in contract, and making them liable as makers of the notes. It would legalize this unauthorized currency, and tend, necessarily, to put its market value at a premium, not only over paper legally executed by the same company, but over unauthorized paper generally, and thereby promote its circulation.
*But can it in fact be maintained by any just reasoning, that the legislature has the power to constitute a contract between, two persons, by statute, without their assent, and against their will ? The British Parliment (whose power and jurisdiction Sir Edward Coke pronounced so transcendent and absolute that it could not be confined, either for causes or persons, within any bounds), it is believed, has never assumed the right to enact written contract obligations between subjects of that realm. And surelysuch a power can not be conceded to the legislature of Ohio, by admitting that the statutes under consideration constituted the notes sued upon, the valid written promises of the plaintiffs in ex*ror.
We have carefully considered the arguments of counsel for defendant in error, and the authorities to which they refer, to show that plaintiffs in error, by force of the statutes mentioned, are liable, in contract, as the promisors and makers of the notes in question. But neither their able and ingenious arguments, nor the authorities referred to, at all remove the difficulties we have suggested;. and which prevent our arriving at the conclusion, that the liability imposed upon plaintiffs in error is one arising in contract against them, as the makers and promisors of the notes: Upon this point *318 -of the case, we think the able argument of counsel for plaintiffs in ■ error must remain unanswered.
The high respect we entertain for the distinguished judges then -composing the court, and the strong desire we have to preserve, so far as practicable, a consistency in the decisions of the court, have induced us to very carefully examine and consider the statement and opinion of the court, in the case of Lawler et al. v. Walker et al., 18 Ohio, 151.
The report of that case does not show what instructions, requested •on the trial by defendants’ counsel to be given to the jury, were refused by the court; but the instructions actually given, as appears by the report of the case, and sustained by the Supreme Court on hearing the writ of error, do not perhaps necessarily imply a construction of the statutes under consideration inconsistent with the views which we entertain. There is nothing in the statement of the case indicating a necessity to find *the plaintiffs in error holden upon the promissory notes, in contract, as the promisor or makers thereof, in order to affirm the judgment.
But the opinion expressed by the court in that case, in regard to the nature of the liability imposed by the statute, that the plaintiffs in error were liable in contract as promisors and makers of the notes, is an opinion in which we find ourselves utterly unable to ■concur. We can not regard such to be the legal effect of the statutes under consideration.
,The suggestion, in that opinion,"that the plaintiffs in error may be held liable on the notes in contract as partners, can not be admitted under the facts of this ease. Nor does this fall within that ■class of cases where one acting professedly in the capacity of an .agent, but without authority, thereby makes himself liable as principal.
In this case, the plaintiffs in error are not shown to have acted without authority from their principal, in advising or directing the issue of the notes. The notes were issued in the name of the company, for the existing indebtedness of the company, and, after issued, were acknowledged and recognized by the company as properly issued, in the name of the company.
Again, if the plaintiffs in error had in fact exceeded their authority in the issuing of the notes, so as to become personally liable, they could not even then be made liable, in contract, on the .notes. The notes contain no mention of their names, nor other lan *319 guage necessary to charge the plaintiffs in error, upon the notes, as promisors. “Is seems clear,” says Mr. Justice Story, “that in no case can an agent be sued on the very instrument itself, unless there are apt words therein so to charge him.” Story on Agency, sec. 264.
It appears to us evident, as well from the language of the statutes as from the circumstances of the case, that the object of the legislature in enacting the statutes was to prohibit wrongs, rather than to invade the rights of incorporated companies.
While the beneficent effects of those artificial persons, called bodies politic, or corporations, have been universally felt and acknowledged wherever civilization has made progress, from the ^time of their first establishment in the Roman empire until the present time, still, like all other potent instrumentalities for good, if not properly conducted and controlled, corporations are liable, by abuses, to become productive of serious evils.
The act of January 27,1816, had evidently for its object (as indicated both by the title and the provisions of the act), “to prohibit the issuing and circulating of unauthorized bank paper.” Section 1 of the act imposes a penalty of SI,000 ; other sections impose fines and forfeitures, to be recovered by action of debt or indictment. Bonds, bills, notes, or contracts, executed to the bank or company in violation of this act, are by its provisions declared null and void — clearly indicating the object of the act to be what its title expresses.
The provisions of section 11, “that every stockholder, shareholder, or partner . . . shall be jointly and severally answerable, in their individual capacity, for the whole amount of the bonds, bills, notes, and contracts of such bank, hereafter executed,” can not, consistently with other provisions of the act, be regarded as contemplating anything more than the imposing of a penalty, to the amount of the bond or note issued’, upon the stockholder, shareholder, or partner concerned in issuing the same.
The object of section 11 is evidently the same as that'of section 4, which imposes a penalty of four times the note, bill, etc., upon any one who shall knowingly receive, pass, or circulate such unauthorized bank paper. No effect could be legally given, we apprehend, to either section, further than to regard them as penal statutes, intended to inhibit rather than encourage the issuing and circulating unauthorized bank paper.
*320 This view of the statutes under consideration disposes of the case
The repeal of the statute of March 12, 1839, and the statute of' limitations pleaded in this case, are' alike determinate of the cause of action of defendant in error.
That clause of the statute of limitations relied upon by counsel for plaintiffs in error, to support their plea, provides as follows:
“All other actions not herein enumerated, within four years-after such right of action shall have -accrued, and that whenever-*any,action for a forfeiture or penalty shall-be given and limited by statute, such action shall be commenced within the time limited.”
As this is not an action enumerated in the statute of limitations governing the case, and it is not “ an action for a forfeiture or penalty given and limited by statute,” it falls within the above-recited provision, and was barred in four years after the right of action accrued. The plea of limitations by plaintiffs in error is therefore well pleaded in this case; and the judgment of the Superior Court must be reversed.
Bartley, C. J., and Brinkerhoee, and Scott, JJ., concurred.
Swan, J., dissented.